```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
IRVING H. PICARD, Trustee for the Liquidation               :
of Bernard L. Madoff Investment Securities LLC,             :
and Bernard L. Madoff,                                      :
                                                            :
                              Plaintiff,                    :       20 Civ. 2560 (LGS)
                                                            :
            -against-                                       :
                                                            :       OPINION AND ORDER
JAMES GREIFF,                                               :
                                                            :
                              Defendant.                    :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

On March 4, 2020, Defendant James Greiff filed a motion to withdraw the reference of the adversary proceeding pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011 and Rule 5011-1 of the Local Bankruptcy Rules.  Plaintiff Irving H. Picard, trustee for the substantively consolidated liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS"), opposes the motion.  For the reasons stated below, Defendant's motion is denied.

**I.     BACKGROUND**

The following facts are drawn from the parties' submissions in support of and in opposition to the motion, including memoranda of law and exhibits.  *See In re AMR Corp.*, No. 12 Civ. 8180, 2013 WL 1155434, at *1 n.1 (S.D.N.Y. Mar. 21, 2013) (considering facts drawn from memorandum of law and accompanying exhibits on a motion to withdraw reference).

**A.     Trustee Appointment**

Defendant's motion to withdraw follows a lengthy procedural history.  On December 11, 2008, the Securities and Exchange Commission (the "SEC") filed a complaint against BLMIS and Mr. Madoff in the Southern District of New York, after he was arrested for violating criminal securities statutes.  On December 15, 2008, the SEC consented to combining that action

with a separate application filed by the Securities Investor Protection Corporation ("SIPC").  The district court then entered an order which, in relevant part, appointed Plaintiff solely as the trustee for the liquidation of BLMIS pursuant to § 78eee(b)(3) of the Securities Investor Protection Act ("SIPA"), and removed the entire case to the bankruptcy court pursuant to § 78eee(b)(4) of SIPA.  *SEC v. Bernard L. Madoff*, No. 08 Civ. 10791 (S.D.N.Y. Dec. 15, 2008), ECF No. 4.

On December 23, 2008, the bankruptcy court entered an order directing former BLMIS customers and other creditors to file claims with Plaintiff by July 2, 2009 (the "Claims Procedures Order").  *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y. Dec. 23, 2008), ECF No. 12.  Pursuant to the Claims Procedures Order, if a claim was not established to Plaintiff's satisfaction, Plaintiff could deny it and notify the claimant in writing.  A claimant could object by filing an objection with the bankruptcy court.  If a claimant did not object, Plaintiff's determination would be deemed final by the bankruptcy court.

**B.     The Customer Claim**

On or about January 17, 2009, Defendant filed a proof of claim for BLMIS account No. 1ZB324, which Plaintiff designated as claim #000626 (the "Customer Claim").  Defendant sought to recover the purported balance in his BLMIS account as stated on his last BLMIS account statement.  On or about August 28, 2009, Plaintiff issued a Notice of Trustee's Determination of Claim to Defendant (the "Notice"), denying the Customer Claim.  As set forth in the Notice, Plaintiff applied a cash-in/cash-out methodology (the "Net Investment Method") to determine the amount of Defendant's claim.  According to the Notice, the Customer Claim was denied based on the negative "net equity" in Defendant's BLMIS account: (1) BLMIS never purchased any securities on behalf of Defendant's account (any and all profits reported to Defendant by BLMIS on his account statements were fictitious); (2) Defendant withdrew more

2

funds than he deposited with BLMIS; and (3) the funds received in excess of the deposits in Defendant's account were taken from other BLMIS customers and given to Defendant. Defendant did not file an objection to the Notice. The Court of Appeals upheld the Net Investment Method, which had been challenged by several BLMIS customers, and rejected the Last Statement Method. *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 237-39 (2d Cir. 2011). On June 24, 2012, the Supreme Court denied *certiorari*.

### C. The Greiff Action

Following his appointment as trustee, Plaintiff brought more than one thousand avoidance actions (an "avoidance action" or "fraudulent conveyance action") to avoid and record BLMIS's fraudulent transfers for ratable distribution to BLMIS customers with allowed claims. On November 30, 2010, Plaintiff commenced this action (the "Greiff Action"). *Picard v. Greiff*, Adv. Pro. No. 10-04357 (Bankr. S.D.N.Y. Nov. 30, 2010), ECF No. 1. The Complaint asserts claims pursuant to §§ 78fff(b), 78fff-1(a) and 78fff-2(c)(3) of SIPA, §§ 105(a), 544, 548(a), 550(a) and 551 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, and other applicable law, seeking the avoidance and recovery of fraudulent transfers in connection with certain transfers of property by BLMIS to or for the benefit of Defendant. Using the Net Investment Method, Plaintiff calculated the amount of net equity in Defendant's BLMIS account as of December 11, 2008, and sought to recover $2,803,787 in fictitious profits received by Defendant. After the case was withdrawn to the district court in June 2011, Defendant's motion to dismiss was granted in part and denied in part on April 30, 2012, and Plaintiff's claim for avoidance of transfers for the two years prior to the filing of the bankruptcy was reduced to $2,595,940. The case then returned to the bankruptcy court on August 4, 2014, and Defendant answered the Complaint on August 17, 2015, asserting several affirmative defenses, including that the Trustee's reliance on the Net Investment Method to determine total fictitious profits was improper.

3

Fact and expert discovery were completed on June 8, 2017.  On February 7, 2020, Plaintiff informed the bankruptcy court that mediation had failed and requested a Rule 7056-1 pre-motion conference.  At a pretrial conference held on February 20, 2020, the bankruptcy court set the Greiff Action for bench trial to begin on April 7, 2020.  On March 4, 2020, Defendant filed the current motion to withdraw the reference.  On April 2, 2020, this case was reassigned to the Court.  On April 20, 2020, Plaintiff filed an opposition, and on April 27, 2020, Defendant filed a reply.

## II.     STANDARDS

District courts have original but not exclusive jurisdiction of all bankruptcy cases under Title 11 of the United States Code.  28 U.S.C. § 1334(b); *accord Stern v. Marshall*, 564 U.S. 462, 473 (2011).  In this district, all proceedings arising under Title 11, including SIPA liquidations, are automatically referred to the bankruptcy court.  28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 *shall be referred* to the bankruptcy judges for the district." (emphasis added)); *see* Amended Standing Order of Reference, M10-468 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.) (referring all bankruptcy matters to the bankruptcy court pursuant to 28 U.S.C. § 157(a)); 15 U.S.C. § 78eee(b)(4) (providing for the removal of SIPA liquidation proceedings "to the court of the United States in the same judicial district having jurisdiction over cases under Title 11").  Once a bankruptcy proceeding -- like the Greiff Action -- has been referred, it may be withdrawn to the district court "for cause."  28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."); *accord Stern*, 564 U.S. at 473.

In determining whether "cause" exists, the Second Circuit has outlined the following factors for a court to consider: (1) whether the claim is core[1] or non-core; (2) efficient use of judicial resources; (3) delay and costs to the parties; (4) uniformity of bankruptcy administration; (5) the preventing of forum shopping; and (6) other related factors. *Orion Pictures Corp. v. Showtime Networks, Inc.*, *(In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993); *accord In re Bernard L. Madoff Inv. Sec. LLC (BAM, L.P.)*, 612 B.R. 257, 262 (S.D.N.Y. 2020). As the movant, Defendant bears the burden of demonstrating "cause" to warrant withdrawal of the automatic reference to the bankruptcy court, *BAM, L.P.*, 612 B.R. at 262, and a court has broad discretion to withdraw the reference for cause. *Id.*; *see In re Lehman Bros. Holdings Inc.*, 18 F. Supp. 3d 553, 557 (S.D.N.Y. 2014); *In re Enron Corp.*, 295 B.R. 21, 25 (S.D.N.Y. 2003).

In *Stern*, the Supreme Court recognized that "statutory authority to enter judgment" on a "core" claim under § 157 does not *automatically* give a bankruptcy court "the constitutional authority to do so." 564 U.S. at 469; *accord BAM, L.P.*, 612 B.R. at 262. Following *Stern*, several courts in the Second Circuit have "further analyze[d] whether the nature of the core proceeding allows the [b]ankruptcy [c]ourt to issue a final judgment," to determine whether the bankruptcy court has final adjudicative authority over a particular claim as a statutory and constitutional matter. *BAM, L.P.*, 612 B.R. at 262 (alterations in original) (collecting cases); *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 57 (S.D.N.Y. 2013) ("Following *Stern* . . . the classification of a claim as core or non-core no longer definitely determines whether the Bankruptcy Court may enter final judgment."). Accordingly, courts also

---

[1] Bankruptcy judges may hear and enter final judgments in all "core proceedings arising under title 11, or arising in a case under title 11," 28 U.S.C. § 157(b)(1), as opposed to non-core proceedings, where a bankruptcy judge may only "submit proposed findings of fact and conclusions of law to the district court," 28 U.S.C. § 157(c)(1), which the district court then enters final judgment, after de novo review of any matter to which a party objects. *See Stern v. Marshall*, 564 U.S. 462, 474-75 (2011). Here, there is no dispute that the Greiff Action, as a fraudulent conveyance action, is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(H).

5

must consider three factors under *Stern*: "(1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court."[2]  *BAM, L.P.*, 612 B.R. at 263 (citing *Stern*, 564 U.S. at 482, 493, 497).

In examining the third factor under *Stern* -- whether the parties consent to final adjudication by the bankruptcy court -- the Supreme Court in *Wellness Int'l Network, Ltd. v. Sharif* held that Article III permits bankruptcy courts to adjudicate claims designated for final adjudication by a bankruptcy court as a statutory matter but not as a constitutional matter (i.e., "*Stern* claims") when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge.  135 S. Ct. 1932, 1939 (2015).  The Court in *Wellness* held that consent need not be express, and that implied consent is sufficient under the Constitution and § 157(c)(2), provided that it is knowing and voluntary.  *Id*. at 1948-49.  The Court noted that allowing implied consent promoted the "pragmatic values" of "increasing judicial efficiency and checking gamesmanship."  *Id*.; *accord BAM, L.P.*, 612 B.R. at 266 n.10.

## III.   DISCUSSION

Defendant argues that cause exists for withdrawal of the reference because he has a constitutional right to a jury trial for the fraudulent transfers at issue, and the bankruptcy court lacks final adjudicative authority of the Greiff Action.  Specifically, he argues that he timely asserted his right to a jury trial; that he does not expressly consent to a final order by the bankruptcy court; that key issues of fact in the Greiff Action are in dispute; that he did not waive his right to a jury trial.  For the following reasons, Defendant's arguments are meritless and the motion is denied.

---

[2] The Supreme Court has "concluded that fraudulent conveyance actions [are] 'more accurately characterized as a private rather than a public right.'"  *Stern*, 564 U.S. at 492 (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 (1989)).  The parties do not dispute this issue as it relates to the Greiff Action.

A.      **Defendant's Jury Demand**

In *Granfinanciera, S.A. v. Nordberg*, the Supreme Court held that a defendant's right to a jury trial -- in the context of a bankruptcy trustee's fraudulent transfer claim -- depends on whether a defendant submitted a claim against the estate. 492 U.S. 33, 58 (1989) ("[U]nder the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate."). By filing a proof of claim, a creditor "triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (quoting *Granfinanciera, S.A.*, 492 U.S. at 58).

Accordingly, by filing the Customer Claim against the BLMIS estate, in which he sought to recover the purported balance of account No. 1ZB324, Defendant triggered the claims allowance process and subjected himself to the bankruptcy court's equitable power. *See In re CBI Holding Co., Inc.*, 529 F.3d 432, 466 (2d Cir. 2008) ("Filing a proof of claim against a bankruptcy estate triggers the process of 'allowance and disallowance of claims,' and, therefore, a creditor who files such a claim subjects itself to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim." (quoting *Granfinanciera, S.A.*, 492 U.S. at 58)); *accord BAM, L.P.*, 612 B.R. at 264 n.6 ("[T]he filing of a statement of claim under SIPA is the 'functional equivalent' of filing a claim in a bankruptcy case." (collecting cases)). That Defendant timely asserted his right to a jury trial, does not expressly consent to a final order by the bankruptcy court and identifies factual issues in dispute does not alter this analysis. To the extent Defendant argues that the bankruptcy court lacks final adjudicative authority over the Greiff Action -- based solely on the principle that Defendant is entitled to a jury trial on his fraudulent transfer claim under the Seventh Amendment -- this argument fails.

Rather, Defendant's right to a jury trial depends on whether he filed a proof of claim -- which he did -- *and* whether the Greiff Action implicates the claims-allowance process. *See*

7

*Germain v. Connecticut Nat. Bank*, 988 F.2d 1323, 1329 (2d Cir. 1993) ("[T]he *Katchen, Granfinanciera,* and *Langenkamp* line of Supreme Court cases stands for the proposition that by filing a proof of claim a creditor forsakes its right to adjudicate before a jury any issue *that bears directly on the allowance* of that claim."). When an issue bears directly on the claims-allowance process, "a creditor forsakes its right to adjudicate . . . not so much on a theory of waiver as on the theory that the legal issue has been converted to an issue of equity." *Id.* at 1330; *accord BAM, L.P.*, 612 B.R. at 267. When the legal issue implicates the claim-allowance process -- and converts into an issue of equity -- it does so "because determining pro rata distribution is characteristically equitable." *Germain*, 988 F.2d at 1329 (citing *Katchen v. Landy*, 382 U.S. 323, 336 (1966)); *see In re CBI Holding Co., Inc.*, 529 F.3d at 466 ("[A] creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to restructuring the debtor-creditor relationship.").

Under 11 U.S.C. § 502(d) -- which governs the process of allowance and disallowance of claims under Title 11 -- "claims of pre-petition fraudulent transfers may be disallowed, [and therefore] an adversary proceeding that invokes 11 U.S.C. § 548 is part of the claims allowance process." *BAM, L.P.*, 612 B.R. at 264-65 (internal quotation marks omitted) (collecting cases); *see In re CBI Holding Co., Inc.*, 529 F.3d at 467-68 ("An action that bears directly on the allowance of a claim is integrally related to the equitable reordering of debtor-creditor and creditor-creditor relations. If an equitable reordering cannot be accomplished without resolution of what would otherwise be a legal dispute, then that dispute becomes an essential element of the broader equitable controversy."). Accordingly, the Greiff Action -- as a fraudulent conveyance action under §§ 544, 548(a), 550(a) and 551 -- implicates the claims-allowance process, is equitable in nature and therefore does confer the right to a jury trial. *See BAM, L.P.*, 612 B.R. at 264-65 (same and collecting cases).

Defendant's primary argument in response is that, because the Customer Claim was disallowed more than a year before the Greiff Action was filed, there is "no link" between the proof of claim and the adversary proceeding, and the Grieff Action therefore does not implicate the claims allowance process.[3] This argument is meritless.

First, the majority of cases have concluded that disallowance or withdrawal of a proof of claim does not affect the bankruptcy court's authority to decide a trustee's claim, as it is the filing of the proof of claim that invokes the waiver and "triggers the process of 'allowance and disallowance of claims,' thereby subjecting [the creditor] to the bankruptcy court's equitable power." *Langenkamp*, 498 U.S. at 44 (quoting *Granfinanciera, S.A.*, 492 U.S. at 58); *see Katchen*, 382 U.S. at 332 n.9 ("[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure."); *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 420 n.5 (5th Cir. 2014) (concluding that, even without the bankruptcy court's express order permitting creditor to re-open a previously resolved proof of claim, it was clear that resolution of the proof of claim "would have required the resolution of the . . . fraudulent transfer claim"); *SNA Nut Co. v. Haagen-Dazs Co., Inc.*, 302 F.3d 725, 730 (7th Cir. 2002) (noting that "nothing in [the relevant Supreme Court precedent] suggests that it makes any difference whether the filing of the adversary proceeding precede[d] or follow[ed] the submission of a claim against the bankruptcy estate," where creditor filed a proof of claim and then an adversary proceeding, before the bankruptcy court finally disallowed the proof of claim (alterations in original)); *Travellers Int'l AG v. Robinson*, 982 F.2d 96, 97 (3d Cir. 1992) (concluding that creditor had waived its right to

---

[3] Defendant is arguing, in essence, that the Greiff Action is a *Stern* claim, a claim "designated for final adjudication in the bankruptcy court as a statutory matter" under §157, "but prohibited from proceeding in that way as a constitutional matter" because, according to Defendant, there is no link between the Customer Claim and Greiff Action. *See Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 30-31 (2014).

9

a jury trial in an adversary proceeding that began after creditor filed a proof of claim -- but before the proof of claim was determined -- even though creditor explicitly noted in the proof of claim that it was *not* waiving its right to a jury trial in an adversary proceeding); *BAM, L.P.*, 612 B.R. at 267-69 (concluding that the bankruptcy court had constitutional authority to adjudicate the trustee's fraudulent conveyance action, even where defendants withdrew their proof of claim before it was decided by the trustee, and noting that *Stern*'s "necessarily be resolved" language should not be read literally (quoting *Stern* 564 U.S. at 499)); *In re WorldCom, Inc.*, 378 B.R. 745, 754 (Bankr. S.D.N.Y. 2007) (noting that "it is immaterial whether the proof of claim has been disallowed prior to the [c]ourt's determination of the jury trial demand" and that "the filing of the proof of claim invokes the claims-allowance process and the creditor subjects itself to the equitable jurisdiction of the [c]ourt thereby waiving its right to a jury trial as to any issue that bears directly on the claims-allowance process" (citing *SNA Nut Co.*, 302 F.3d at 730)).

The cases cited by Defendant -- to support the proposition that the Grieff Action does not implicate the claims allowance process -- are inapposite and do not bind the Court. Defendant relies on the following language from *Picard v. Estate of Igoin (In re BLMIS)*, 525 B.R. 871 (Bankr. S.D.N.Y. 2015): where "customers claims have been finally denied by the Trustee . . . the adversary proceeding does not implicate the claims allowance process." *Id*. at 888. However, this language arises within the court's analysis of whether the adversary proceeding at issue implicated the claims allowance process for purposes of exercising personal jurisdiction, *id*. at 882-89 -- an issue not before this Court -- and the language is not directly supported by any binding authority. Defendant also quotes *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 531 B.R. 439 (Bankr. S.D.N.Y. 2015), stating that "no § 502(d) disallowance claim would lie against a defendant who filed a claim that has been finally disallowed." *Id*. at 455. However, the court supports this proposition with only a *cf*. cite to the personal jurisdiction holding from *In re BLMIS*, 525 B.R. at 888, rather than any authority that would bind this Court.

10

Defendant also quotes *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46 (S.D.N.Y. 2013), stating that "the fact that certain defendants have filed net equity claims, standing alone, does not empower the Bankruptcy Court to finally decide the Trustee's avoidance actions." *Id*. at 54.  The court then states that "[a]s in *Stern* . . . [it] has no 'reason to believe that the process of adjudicating' net equity claims 'would necessarily resolve' the Trustee's avoidance actions." *Id*. (quoting *Stern*, 564 U.S. at 497).  However, in the next paragraph after the quoted language, the court identifies the "one circumstance" where a bankruptcy court can "resolve an avoidance action in the process of deciding a claim over which it has jurisdiction," where, as here, "the Trustee has sought to disallow a claim under § 502(d)" and therefore the bankruptcy court "will have to determine whether the claimant has received 'a transfer avoidable under section . . . 547 [or] 548.'" *Sec. Inv'r Prot. Corp.*, 490 B.R. at 54 (quoting 11 U.S.C. § 502(d)).

Even if, under *Stern*, the Greiff Action did not implicate the claims allowance process, the bankruptcy court has constitutional authority to enter final judgment in the Greiff Action based on the separate and independent ground of Defendant's implied consent.  *See Wellness Int'l Network, Ltd.*, 135 S. Ct. at 1945, 1948-49 (concluding that allowing bankruptcy courts to decide *Stern* claims by consent, including by implied consent, "does not usurp the constitutional prerogatives of Article III courts").  Because the Greiff Action is a fraudulent conveyance action brought under §§ 548 and 550, "due to the nature of 11 U.S.C. § 502(d) . . . [it is] part and parcel" of the Customer Claim.  *BAM, L.P.*, 612 B.R. at 266 n.10.  Therefore, when Defendant filed his Customer Claim, he impliedly consented to the bankruptcy court's "inherent authority to decide, as a threshold matter pursuant to § 502(d), any antecedent claims." *Id*.; *see In re Kirwan Offices S.a.R.L.*, 792 F. App'x 99, 103 (2d Cir. 2019) (summary order) (concluding that "[w]e need not decide whether *Stern* would otherwise require entry of a final order by the district court,

11

because we find that [appellant] implicitly consented to the bankruptcy court's jurisdiction [where, in part, appellant] . . . voluntarily presented [his] claims to the bankruptcy court").

This conclusion is strengthened by the fact that, in filing the Greiff Action, Plaintiff "assert[ed] a right of recovery created by federal bankruptcy law," *Stern* 564 U.S. at 498, as opposed to the state law counterclaims at issue in *Stern*. *See BAM, L.P.*, 612 B.R. at 266 n.10 (concluding the same). That Defendant now objects to the bankruptcy court's authority to enter final judgment in the Greiff Action -- after pursuing his claims in bankruptcy court for nearly a decade -- does not alter the Court's conclusion. *See Saenz v. Gomez*, 899 F.3d 384, 390-91 (5th Cir. 2018) (finding no clear error in the conclusion that all parties gave implied consent to the bankruptcy court's jurisdiction to issue a final judgment, including where appellants submitted a pre-trial statement in which they listed no jurisdictional issues and voluntarily participated in court proceedings, including seeking affirmative relief by filing motions to dismiss); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) ("[T]he parties forfeited any objection to the bankruptcy court's adjudication of the contract claim by failing to object at any point during the litigation to the bankruptcy judge's adjudicating the claim."); *BAM, L.P.*, 612 B.R. at 266 n.10 (concluding that defendants impliedly consented to the bankruptcy court's authority to enter final judgment in the at-issue fraudulent conveyance action, in part, where defendant's pursuit of their claims in bankruptcy court for nearly a decade "further evidence[d] their consent").

**B.   *Orion* Factors**

The Court separately concludes that the *Orion* factors support denying Defendant's motion to withdraw the reference. *See, e.g.*, *BAM, L.P.*, 612 B.R. at 263-71 (analyzing both whether the *Orion* factors supported denying defendant's motion to withdraw and whether, after *Stern*, the nature of the core proceeding allows the bankruptcy court to issue a final judgment consistent with Article III); *Picard v. Saren-Lawrence*, No. 17 Civ. 5157, 2018 WL 2383141, at *2-6 (S.D.N.Y. May 15, 2018) (same).

As noted earlier, the Greiff Action is a core proceeding and the avoidance claim is equitable in nature because Defendant filed a proof of claim. Both of these factors support denying Defendant's motion to withdraw. *See BAM, L.P.*, 612 B.R. at 264-65 (same). With respect to efficiency, delay and costs, uniformity and other related factors, *In re Orion Pictures Corp.*, 4 F.3d at 1101, withdrawal of the bankruptcy reference would delay resolution of the Greiff Action -- which has been pending for almost ten years -- and "would strip determination of core issues from a forum that has developed significant expertise over this SIPA liquidation, and would risk producing inconsistent outcomes given Bankruptcy Judge Bernstein's involvement in numerous [other] adversary proceedings to avoid and recover transfers BLMIS made to certain customers." *BAM, L.P.*, 612 B.R. at 265 (alteration in original); *see Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 568 B.R. 203, 205 (Bankr. S.D.N.Y. 2017) (same), *aff'd*, 598 B.R. 102 (S.D.N.Y. 2019); *see Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (noting that efficiency and uniformity were "critical question[s]" (citing *In re Orion Pictures Corp.*, 4 F.3d at 1100)).

As Plaintiff states, having overseen the resolution of over 700 adversary proceedings since 2014, including resolving over 230 motions to dismiss, various discovery-related motions, conducting a trial on various claims issues, including net equity, and most recently conducting a trial in two consolidated good faith cases, Judge Bernstein is "undoubtedly more familiar" with the factual and legal issues in the Grieff Action. *See In re Motors Liquidation Co.*, 538 B.R. 656, 665 (S.D.N.Y. 2015) (noting that there were "no efficiency gains to be made by withdrawing the reference," given that the bankruptcy judge was "undoubtedly more familiar" with the relevant legal questions); *Saren-Lawrence*, 2018 WL 2383141, at *6 ("Considerations of efficiency weigh against withdrawal because, as another judge in this District has noted, Judge Bernstein has great familiarity with the facts regarding the BLMIS Estate."); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014)

13

("Judge Bernstein's intimate familiarity with the Madoff matter causes this court to view his conclusions with particular deference.").

Finally, "considerations of forum shopping weigh against withdrawal of the reference, because denying withdrawal will keep the action in the forum in which it was filed, and will discourage other claimants from using withdrawal as a litigation tactic in hopes of achieving more favorable results in adversary proceedings." *Saren-Lawrence*, 2018 WL 2383141, at *6 (internal quotation marks and citation omitted); *see In re Orion Pictures Corp.*, 4 F.3d at 1101 (noting that the district court may weigh "other related factors" in considering whether to withdraw the reference).

Accordingly, Defendant has failed to demonstrate that the *Orion* factors favor withdrawal of the bankruptcy reference under 28 U.S.C. § 157(d).

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to withdraw the bankruptcy reference is DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket No. 1.

Dated: June 4, 2020
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**